IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
CENTRAL ALABAMA FAIR        )
HOUSING CENTER, et al.,     )
                            )
    Plaintiffs,             )
                            )    CIVIL ACTION NO.
    v.                      )     2:11cv982-MHT
                            )         (WO)
JULIE MAGEE, in her         )
official capacity as        )
Alabama Revenue             )
Commissioner, and           )
JIMMY STUBBS, in his        )
official capacity as        )
Elmore County Probate       )
Judge,                      )
                            )
    Defendants.             )
```

OPINION AND ORDER

This matter is before the court on the plaintiffs' motion for a temporary restraining order against defendants Julie Magee (in her official capacity as Alabama Revenue Commissioner) and Jimmy Stubbs (in his official capacity as Elmore County Probate Judge), filed November 18, 2011, and now under submission following a

hearing held on November 23, 2011.  For the reasons that follow, the motion will be granted.

To warrant temporary injunctive relief under Federal Rule of Civil Procedure 65, the plaintiffs must demonstrate: (1) a substantial likelihood of success on the merits of their underlying case, (2) that they will suffer irreparable harm in the absence of an injunction, (3) that the harm suffered by the plaintiffs in the absence of an injunction would exceed the harm suffered by the defendants, and (4) that an injunction would not disserve the public interest.  Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011).  In balancing these four factors, while the likelihood of success is generally most important, the court may employ a "sliding scale" by "balancing the hardships associated with the issuance or denial" of the injunction against "the degree of likelihood of success on the merits," Florida Medical Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welf., 601 F.2d 199, 203 n.2 (5th Cir. 1979); the greater the

2

potential harm, the lower the likelihood of success needs to be. Id.[1] Accordingly, where the "balance of equities weighs heavily in favor of granting the injunction, the movant[s] need only show a substantial case on the merits." Gonzalez v. Reno, 2000 WL 381901, at *1 (11th Cir. 2000) (quoting Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. June 26, 1981)).

This lawsuit challenges the defendants' enforcement of § 30 of the Beason-Hammon Alabama Taxpayer and Citizen Protection Act, 2011 Ala. Laws 535 ("HB 56"), as applied to Alabama's manufactured homes statute, 1975 Ala. Code § 40-12-255. Importantly, this as-applied challenge raises a host of issues not considered by the court in United States v. Alabama, 2011 WL 4469941, at *58-60 (N.D. Ala. Sept. 28, 2011) (Blackburn, J.), or Hispanic Interest Coalition of Alabama v. Bentley, 2011 WL 5516953 (N.D.

---

    1.  In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

3

Ala. Sept. 28, 2011) (Blackburn, J.).  In those cases, which were both facial challenges, the court never ruled on, or even considered, the lawfulness of § 30 of HB 56 as applied to § 40-12-255.

Section 30 of HB 56 makes it unlawful for "[a]n alien not lawfully present in the United States" to enter into, or attempt to enter into, "a business transaction with the state or a political subdivision of the state."  HB 56 § 30 (Doc. No. 31-1, at 68).  Meanwhile, § 40-12-255 requires that owners of manufactured homes pay an annual registration fee to get an identification decal that must be visibly displayed on the exterior of the manufactured home.  1975 Ala. Code § 40-12-255(a).  The manufactured-home registration papers and fee are due October 1 of each year and are considered delinquent if not paid by November 30, at which point a non-compliant owner of a manufactured home can be given a civil fine or face criminal charges for a class C misdemeanor, punishable up to three months in jail.  1975 Ala. Code § 13A-5-7(a)(3).

The plaintiffs present a number of theories for relief, but the court need consider only one for the purposes of granting this temporary-restraining-order request: As currently applied to § 40-12-255, § 30 conflicts with federal law and is therefore preempted.

The first consideration the court must make is whether the plaintiffs have demonstrated a substantial likelihood of success on the merits of this claim. The court finds that, quite convincingly, the plaintiffs have met their burden. When a state law conflicts with a federal statute, the state law is necessarily preempted. <u>Crosby v. National Foreign Trade Council</u>, 530 U.S. 363, 372 (2000). In the immigration context, States "enjoy no power with respect to the classification of aliens," <u>Plyler v. Doe</u>, 457 U.S. 202, 225 (1982); that power is committed exclusively "to the political branches of the Federal Government." <u>Id</u>. As a corollary, the "[p]ower to regulate immigration is unquestionably exclusively a federal power." <u>DeCanas v. Bica</u>, 424 U.S. 351, 354

(1976). Through the Immigration and Nationalization Act, Congress created "'a comprehensive federal statutory scheme for regulation of immigration and naturalization' and set 'the terms and conditions of admission to the country and subsequent treatment of aliens lawfully in the country.'" Chamber of Commerce v. Whiting, 131 S. Ct. 1968, 1973 (2011) (quoting DeCanas, 424 U.S. at 353, 359).

In conjunction with this scheme and to assist with immigration enforcement, Congress created certain mechanisms, such as the Department of Homeland Security's Systematic Alien Verification for Entitlements program (SAVE) and 8 U.S.C. § 1373(c), that permit States and localities to obtain an immigrant's lawful status. But these programs only allow state agents to verify immigration status, which means these agents perform ministerial functions and "no independent determinations are made and no state-created criteria are applied." League of United Latin American Citizens v. Wilson, 908 F. Supp. 755, 770 (C.D. Cal. 1995) (emphasis added). Section

30 of HB 56 purports to rely upon the two above federal enforcement mechanisms:  SAVE and § 1373(c).  <u>See</u> HB 56 § 30(c) (Doc. No. 31-1, at 68-69).  But, as was made dramatically clear by the testimony of both defendants in the hearing held on November 23, 2011, the defendants use neither SAVE nor § 1373(c) when determining whether to allow the owner of a manufactured home to obtain his or her annual registration decal.  Instead, the evidence reflects that the Alabama Revenue Department and the Elmore County Probate Office initially proposed to use their own, state-created alternative for determining whether, under § 30, an individual has adequately demonstrated his or her lawful citizenship status, but are now in the process of developing a new system that will comply with HB 56.[2]  Not only is it unclear what this new process will be but it is also unclear whether that new process will be in operation any time in the near future.

---

    2.  It appears that the defendants propose to use a list of documents included in § 12(d) and § 29(k) of HB 56 to determine citizenship and lawful status.  They are not verifying lawful status with the federal government.

What is clear is, first, that the defendants do not now have in place a definite process that will be in sync with federal immigration law and, second, that they will not have a process in place any time soon.  The conclusion that the defendants' current process (or, perhaps to be more accurate, lack of a definite process) conflicts with federal law is inescapable.  The plaintiffs, therefore, have shown a substantial likelihood on the success of the merits of their claim.

Combining the second and third factors, the court finds that the plaintiffs are likely to face irreparable harm if application of § 30 of HR 56, as applied to § 40-12-255, is not enjoined: they face both civil and criminal liability after November 30, 2011, because they are being prohibited from paying their registration fees.  The court finds that any harm to the defendants is slight, especially given the short-term nature of this order and given the uncertainty that the defendants will have in

8

place any time soon a process for determining citizenship status.

Fourth and finally, the court finds that the public interest will be served by granting a temporary restraining order, which will be used to preserve the status-quo and prevent the plaintiffs from facing potential civil and criminal liability, as the court considers the plaintiffs' still-pending motion for a preliminary injunction.

***

Accordingly, it is ORDERED:

(1) The plaintiffs' motion for a temporary restraining order (Doc. No. 13) is granted.

(2) Defendants Julie Magee and Jimmy Stubbs, and all those acting in concert with them, are hereby ENJOINED from requiring any person who attempts to pay the annual registration fee, required by 1975 Ala. Code § 40-12-255, to prove his or her U.S. citizenship or lawful immigration status.

(3) Defendants Magee and Stubbs, and all those acting in concert with them, are ENJOINED from refusing to issue the manufactured home decal required by 1975 Ala. Code § 40-12-255 to any person because that person cannot prove his or her U.S. citizenship or lawful immigration status.

(4) Defendant Magee is hereby ORDERED to immediately notify all county officials who are responsible for enforcing the manufactured home registration requirements of 1975 Ala. Code § 40-12-255 of this temporary restraining order.

(5) This injunction shall expire on December 7, 2011, at 4:30 p.m.

DONE, this the 23rd day of November, 2011, at 4:30 p.m.

          /s/ Myron H. Thompson
     UNITED STATES DISTRICT JUDGE