IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CENTRAL ALABAMA FAIR | ) | |
| HOUSING CENTER, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:11CV982-MHT |
| | ) | (WO) |
| JULIE MAGEE, in her official capacity as | ) | |
| Alabama Revenue Commissioner, | ) | |
| and | ) | |
| JIMMY STUBBS, in his official capacity as | ) | |
| Elmore County Probate Judge, | ) | |
| | ) | |
| Defendants. | ) | |

## PROTECTIVE ORDER

As explained by the court in its memorandum opinion granting a preliminary injunction, *Central Alabama Fair Housing Center v. Magee*, --- F.Supp.2d ----, 2011 WL 6182334, (M.D. Ala. December 12, 2011), this case involves the application of § 30 of the Beason-Hammon Alabama Taxpayer and Citizen Protection Act (commonly referred to as "HB 56"), 2011Ala. Laws 535, in a manner which essentially prohibits individuals who cannot prove their citizenship status from remaining in their manufactured homes. Presently before the court is a motion for protective order filed by the plaintiffs on January 6, 2012.  (doc. # 111).  The court heard oral argument on the motion on February 14, 2012.  The court has carefully considered the briefs of the parties, and based on the argument and the briefs, the court concludes that a protective order should issue but not under the terms requested by the plaintiffs.

In their motion, the plaintiffs request that the court

> pursuant to Rule 26(c) of the Federal Rules of Civil Procedure . . . [enter] an appropriate protective order restricting the dissemination of certain information they will produce through the discovery process—specifically, the identity of and contact information for John Doe #1[1] and John Doe #2 (hereinafter, "Doe Plaintiffs"), and information related to the immigration status of potential parties, class members, and witnesses.

(Plts.' Mot. for Protective Order at 1, doc. # 111)

In support of this motion, the plaintiffs, while confirming their willingness to disclose discovery information to the defendants, state they "fear that absent a protective order restricting Defendants and their counsel from further dissemination of this information, the Doe Plaintiffs, class members, and witnesses will be at a substantial risk of harassment, violence, arrest, and deportation." (*Id.* at 2)  Thus, the plaintiffs argue that the *in terrorem* effect of disclosure justifies the protective order.  It appears to the court that this "fear" is more than abstract or speculative.  Plaintiffs, for example,  note that Sections 5 and 6 of HB 56 require Defendants and their attorneys, upon pain of civil and criminal penalty, to disclose to appropriate officials the identities of the Doe plaintiffs and the immigration-related information of anyone they suspect of being undocumented and anyone they suspect of violating any provision of HB 56.  And, at oral argument on February 14, 2012, the defendants indicated to the court that while they agree not to make public disclose of this information, they could not agree that they would not disclose it to federal immigration officials because of two federal statutes, statutes which the court will

---

[1]On February 9, 2012, the plaintiffs filed a notice of voluntary dismissal of John Doe #1.

discuss later in this order.

In its preliminary injunction opinion, this court recognized the *in terrorem* impact disclosure has on aliens not lawfully present in the United States.  The court first described how § 28 of HB 56 achieves a goal of creating "strong incentives for undocumented aliens to leave the State (or "self-deport") even if, and despite the fact that, their children are U.S. citizens," by requiring schools to record whether a student is the child of an alien not lawfully present in the United States.  "This requirement relies on the strong disincentive parents have to reveal to schools that their U.S. citizen children have parents that are 'not lawfully present in the United States.' "  *Central Alabama Fair Housing Center v. Magee*, ___ F.Supp.2d ____, ____, 2011 WL 6182334, 17 (M.D.Ala. December 12, 2011).[2]

Understanding what relief the plaintiffs request from the court is best achieved by looking to the plaintiffs' proposed protective order.  In that document, the term "confidential information" is defined as any information which discloses

> a. the identities, addresses, phone numbers, and any other contact or identifying information pertaining or relating to Parties or individuals granted permission by the Court to proceed under a pseudonym (including but not limited to John Doe #1 and John Doe #2), their family members, and

---

[2]The plaintiffs also argue that absent issuance of a protective order, sections 5 and 6 of HB 56 violate their constitutional right of access to the courts.  A well establish principle of judicial restraint counsels that a court should "avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Nw. Indian Cemetery Protective Ass'n.*, 485 U.S. 439, 445 (1988).  Indeed, the federal courts are duty bound to avoid a constitutional question if answering the question is unnecessary to the adjudication of the claims at hand.  *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 807-808 (11th Cir. 2010).  Because addressing the constitutional question is unnecessary, the court declines to reach this issue.

anyone with whom they reside;

b. immigration-related information of any individual party, potential or actual class member, witness, or of their family members or cohabitants, including but not limited to, immigration status, alienage, national origin, dates of entry to the United States, immigration documents, Alien identification numbers ("A-numbers") or any other number used or assigned by government entities for identification purposes, passport and visa numbers, immigration proceedings, and applications for immigration or work authorization documents.

The proposed protective order would prohibit the defendants and their attorneys disclosing in any manner "confidential information" to "any person, firm, agency, corporation, or other entity"  not expressly authorized by the order to receive it.

The defendants oppose the motion for protective order.  First, the defendants argue that the motion is overbroad because it asks the court to protect "any kind of information related to any person's immigration status that is discovered in this lawsuit.  Such a sweeping prohibition covers persons by default who may not actually need their information protected for the reasons stated in Plaintiffs' motion."  (Defs.' Resp., doc. # 121 at 2-3)  Correctly, the defendants note that the sweep of the plaintiffs' request potentially would cover information already in the public domain.  Secondly, the defendants argue that issuance of the protective order prohibiting disclosure of immigration information by the defendant public officials and their lawyers to any law enforcement agency would violate 8 U.S.C. § 1373 or 8 U.S.C. § 1644.

The court will first address the defendants' contention that § 1373 and § 1644 prohibit the court from issuing a protective order.  Title 8 U.S.C. § 1373 deals generally

4

with communication between government agencies and the Immigration and

Naturalization Service as follows:

    a) In general

    Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

    (b) Additional authority of government entities

    Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:

    (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.

    (2) Maintaining such information.

    (3) Exchanging such information with any other Federal, State, or local government entity.

Title 8 U.S.C. § 1644 provides

    Notwithstanding any other provision of Federal, State, or local law, no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from the Immigration and Naturalization Service information regarding the immigration status, lawful or unlawful, of an alien in the United States.

    The plain wording of both statutes broadly prohibits restrictions on the free flow of

information about the immigration status of aliens present in the United States.  The only

significant difference between the statutes is that § 1644 applies to entities whereas §

5

1373(a) applies to both entities and officials. The named defendants in this case are state

government officials. Their lawyers are Assistant Attorney Generals for the State of

Alabama. Thus, the defendants argue that §§ 1373 and 1644 prohibit the court from

preventing the defendants or their attorneys from disclosing information learned through

the discovery process.

It is unnecessary for the court to delve into any issues related to the applicability of

these statutes or whether they do indeed cabin the authority of the court with respect to

the parties or their counsel.[3]   While §§ 1373 and 1644 arguably prevent the court from

stopping the defendant officials from making disclosure of immigration information,

these statutes assuredly do not prohibit the court from controlling how the private party

plaintiffs and their counsel respond to discovery requests. *See, e.g., Day v. Sebelius*, 227

F.R.D. 668, 678 (D. Kan. 2005) (Sections 1373 and 1644 do not prevent court from

precluding private parties from disclosing immigration status information).

The court has inherent authority to control the discovery process under FED R. CIV.

P. 26. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292 (11th Cir. 2011);

*Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir.1993). And, given the nature of this case,

---

[3]The plaintiffs suggest that Congress does not have the authority to prohibit the court from issuing orders in this lawsuit. But there are plenty of statutes that prevent courts from issuing certain types of orders. These are just a few examples: Title 8 U.S.C. § 1252(g) prohibits a federal court from "hear[ing]" alien claims. Title 28 U.S.C. § 2283, the anti-injunction statute, prohibits federal courts from enjoining state court proceedings. Title 18 U.S.C. § 924(c)(1)(D)(ii) prohibits a district court from ordering a term of imprisonment under 18 U.S.C. § 924(c) to run concurrently with "any other term of imprisonment." The Bail Reform Act specifically prohibits a court from "impos[ing] a financial condition that results in the pretrial detention of the [defendant]." 18 U.S.C. § 3142(c)(2).

the court concludes it is appropriate that it exercise that authority in a manner which admittedly is more intrusive than the usual process of discovery which is designed to and hopefully does operate without judicial intervention.  This conclusion should not be understood as any criticism of the parties or their counsel.  Rather, the court finds that greater control by the court in this case which involves sensitive and publically volatile issues will lead to less controversy and a more efficient and less costly discovery process.[4] In that regard, even if the initial protection afforded by this order is broad, as the process of discovery proceeds, the court expects that the nature and scope of the protection will narrow.  Thus, the court concludes that the defendants' objections on that basis are premature.

There is one final question the court must address.  At oral argument the defendants stated that they need discovery primarily for jurisdictional purposes, arguing correctly that they are entitled to test the jurisdictional premises underlying this lawsuit. But with regard to restrictions on discovery, defense counsel argued that at the TRO hearing before Judge Thompson they did not object to the individual plaintiffs proceeding under a pseudonym so long as the defendants could conduct discovery.  At oral argument

---

[4]In reaching this conclusion, the court is well aware of the continuing controversy about the ability of a court to adequately control discovery.  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), even the Supreme Court expressed dismay about the ability of judges to control discovery. *Id.* at 559-60.  For a contrary view, *see* Richard A. Epstein, *Of Pleading and Discovery: Reflections on Twombly and Iqbal with Special Reference to Antitrust,* 2011 U. Ill. L. Rev. 187, 201, 206-07 (2011). The instant case, however, does not presently appear to the court to involve complex facts which might adversely affect the ability of the court to effectively control discovery.

on February 14, 2012, counsel for the defendants explained, "What happened was, at the hearing on the TRO . . . we agreed in open court not to oppose the motion with the stipulation that we would be allowed to do similar to what has been done in the Northern District immigration cases which is conduct discovery freely in that the court could enter appropriate protective orders but that we would be allowed to ask questions . . . [unintelligible] information to take depositions. The order that you are referring to that granted that motion . . . says the motion is granted subject to the conditions stated in court."[5] Here is what happened at the TRO hearing.

THE COURT: Okay. Why don't we take up a few preliminary matters. The first thing I'd like to take up before we get to the two motions that are the subject of this hearing, those motions being the motion for TRO and the motion for preliminary injunction, is the motion for leave to proceed under a pseudonym. What's the defendants' position on that motion, or have you developed one?

MR. DAVIS: We have, Your Honor. This issue was dealt with in the Northern District in a very similar case. And there, Judge Blackburn found a solution that I think is appropriate. She gave the plaintiffs permission to proceed under pseudonyms; but she noted that if, as the case developed, the defendants would need to conduct discovery, there would be some leeway; that if we needed the identities in order to do it, that could be accommodated so that we could protect our interests, but the identity would be protected from the public. So with that caveat, we have no objection to the motion.

THE COURT: The motion can be granted subject to leave to the defendants, at the appropriate time, to ask for information or to take depositions of the Doe plaintiffs.

---

[5]This quote is taken from the tape of the proceedings held on February 14, 2012.

(Tr. Mot. Hearing Regarding TRO at 6-7, doc. # 68)

To be blunt, nothing in the proceeding held before Judge Thompson on November 23, 2011, suggests that the defendants were given carte blanche to "freely" conduct discovery in whatever manner they desire.  In addition, the undersigned does not accept the premise that under any circumstances this court would ever bargain away its authority to manage litigation to avoid having to consider on the merits any issue, much less a question such as allowing the plaintiff to proceed under a pseudonym.

All discovery in this case must be completed by October 5, 2012. (Uniform Scheduling Order, ¶ 7, doc. # 110, entered January 6, 2012)  Thus, there is ample time for the parties to complete the discovery process under the orders of the court.  The approach the court will take is to allow discovery on a phased or incremental basis.  The plaintiffs, at least initially, will be authorized to respond to discovery without disclosing any personally identifiable or immigration status information about certain persons.  However, the plaintiffs will be required to maintain in their possession discovery responses which do contain the personally identifiable or immigration status information and barred from disclosure of these documents except on order of the court.  No discovery concerning witnesses shall be allowed at this time.

Accordingly, it is ORDERED that the motion for protective order (doc. # 111) be and is hereby GRANTED as follows:

1.  No discovery shall be conducted without leave of the court.

2.  On or before March 19, 2012, the parties may propound interrogatories in accordance with FED R. CIV. P. 33 and the understandings between the parties as memorialized in the Joint Report of the Parties' Planning Meeting conducted on December 28, 2011. (doc. # 103) No other form of discovery is permitted at this time.

3.  No discovery seeking disclosure of the identity of any witness shall be allowed at this time.

4.  With respect to responses by the plaintiffs to discovery, counsel for the plaintiffs shall insure that responses to discovery served on the defendants contain no personally identifiable or immigration status information about the individual plaintiff or their family members, persons with whom the plaintiff resides or putative class members. The foregoing notwithstanding, plaintiffs' counsel shall likewise insure that any redaction goes no further than that necessary to fulfill the purposes of this order.[6]

5.  With respect to responses by the plaintiffs to discovery, counsel for the plaintiffs shall maintain in their possession unredacted versions of all discovery responses and shall not disclose the unredacted versions except by order of the court.

6.  Upon receipt of any discovery responses or objections, the opposing party may file appropriate motions pursuant to FED R. CIV. P. 37(a), and the court will promptly consider the motion.  In this regard, counsel are reminded of their obligation under the Rules to *confer* about any discovery dispute before seeking relief from the court.  It is

---

[6]At the time of the preparation of this order, only one individual plaintiff remained in this lawsuit.  If additional individual plaintiffs are joined, this order shall fully apply to them.

further

ORDERED that a discovery scheduling conference be and is hereby set on April 24, 2012, at 1:30 p.m.  This conference shall be conducted by telephone conference which shall be set up by the plaintiffs.  The purpose of this conference is to determine what further discovery shall be allowed and to establish a schedule for this discovery.  Counsel should be fully prepared to discuss this subject with the court.

Done this 5th day of March, 2012.


      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE